UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. No. 04-010304-RCL |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | MEMORANDUM IN |
| v. | ) | SUPPORT OF |
| | ) | MOTION TO SUPPRESS |
| | ) | DEFENDANT'S STOP & |
| | ) | SUBSEQUENT SEARCH |
| JARED CROWLEY | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COMES NOW DEFENDANT JARED CROWLEY, by and through his attorney of record, who hereby submits the following memorandum in support of his motion to suppress evidence obtained as a result of an unlawful stop and search of his person and a backpack on May 27, 2004 in Lowell, Massachusetts.

**PRELIMINARY STATEMENT**

On May 27, 2004, pursuant to the Lowell Police Department incident report, Officers Comtois, Frechette, Lally along with Detectives Erickson and Hudon participated in the stop, search and arrest of Mr. Jared Crowley. As a result of the stop, Mr. Crowley was initially charged in state court with possession of a firearm, possession of ammunition and knowingly receiving stolen property. Mr. Crowley was later charged in the above captioned matter as a

1

felon in possession of firearm and ammunition in violation of Title 18, United States Code, Section 922(g)(1).

On or about 7:00 pm on May 27, 2004 the Lowell Police received a telephone call from a female describing a white male wearing a blue football jersey and grey sweat pants with a gun in his waistband. The white male was reported to be in the company of a black male wearing a white t-shirt and a black hat walking on Morse Street towards Chelmsford Street.

Officer Frechetta heard the description provided by the communication's room, interviewed the caller and radioed Officer Lally informing him that he believed the individuals to be walking towards Doane Street. Officer Lally and Detective Erickson arrived on scene before Officer Frechetta and Comtois. When Officer Frechetta arrived he observed Officer Lally speaking with a white male wearing a light blue football jersey, gray sweat pants and a blue backpack. Officer Frechetta further observed Detective Erickson speaking with a dark skinned Spanish male.

As Officer Frechetta approached the group, he observed Officer Lally "placing Crowley on the ground". Officer Frechetta learned from Officer Lally the identity of the individual on the ground and was further informed that the individual was a convicted felon

known to the officer to carry firearms.[1]  Officer Lally conducted a pat frisk of the individual and Officer Frechetta "pat frisked the backpack".  Officer Frechetta felt a hard object which he believed to be a handgun.  Officer Frechetta then opened the backpack and recovered a silver Smith & Wesson 357 Magnum Model 66-2 loaded with 4 rounds of ammunition.  Officers then placed the individual under arrest for possession of a firearm.

**ARGUMENT**

**THE POLICE LACKED PROBABLE CAUSE TO ARREST MR. CROWLEY...**

**THE POLICE STOP OF MR. CROWLEY CONSTITUTED AN ARREST**

The United States Supreme Court has continuously expressed that: "[i]t remains a 'cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment- subject to a few specifically established and well recognized exceptions,'" California v. Acevedo, 500 U.S. 585, 111 S.Ct. 1982, 1991 (1991) *citations omitted*.  See also  Minnesota v. Dickerson, 113 S.Ct. 2130, 2135 (1993); United States v. Schiavo, 29 F.3rd 6 (1st Cir. 1994).

---

[1] Of note is that Defendant's only relationship with firearms was a conviction for firearm possession in 2001.  He has no other convictions for "carrying" a firearm.  Any reference to defendant's 2001 conviction as being known to "carry firearms" is misleading at best.

Whether the officer's basis for the stop is reasonable is a fact specific inquiry. See <u>United States v. Zapata</u>, 18 F.3d 971, 975 (1st Cir. 1994) (noting that "[t]here is no scientifically precise formula that enables courts to distinguish between valid investigatory stops and <u>de facto</u> arrests").  The Supreme Court has directed that courts make an inquiry to examine "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." <u>United States v. Sharpe</u>, 470 U.S. 675, 686 (1985) (citations omitted).

In determining whether an officer's actions were reasonable under the circumstances the First Circuit applies a two-prong test. First, courts should examine whether the "officer[s'] actions were justified at [their] inception," and if so, "whether the actions undertaken by the officer[s] following the stop were reasonably responsive to the circumstances justifying the stop in the first place as augmented by information gleaned by the officer[s] during the stop." <u>United States v. Sowers</u>, 136 F.3d 24, 27 (1st Cir.), cert. denied, 119 S. Ct. 105 (1998).  <u>See also</u>, <u>United States v. Trueber</u>, 238 F.3d 79 (1st Cir. 2001), <u>United States v. Pardue</u>, 385 F.3d 101 (1st Cir. 2004).

In the instant case, Mr. Crowley was approached by officers based on the observations of a female caller and the description

provided by her.  At the time of the stop the officers did not observe Mr. Crowley to be involved in any criminal activity, nor did they have any indication that Mr. Crowley had just been involved in any criminal activity.  The female caller merely informed police that she had observed the described individual with a black gun in his waistband.  The caller did not provide any information as to whether she had observed the individual use the handgun in a threatening manner, only that she observed an individual in possession of a handgun in his waistband.  This statement is the sole reason for the officers approach and conduct.

A person has been 'seized' for purposes of the Fourth Amendment in view of all circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.  See, United States v. Mendenhall, 446 U.S. 544 (1980).  See also, Terry v. Ohio, 392 U.S. 1, 16 (1968) ("It must be recognized that whenever police officers accosts an individual and restrains his freedom to walk away, he has 'seized' that person.").

The government will likely argue that Mr. Crowley was not under arrest at the time of the search, that it was merely an investigatory stop.  There is no "litmus paper test" to determine whether a particular detention goes beyond an investigatory stop and amounts to a de facto arrest.  United States v. Acosta-Colon,

157 F.3d 9 (1st Cir. 1998). However, an investigatory stop constitutes a de facto arrest "when a 'reasonable man in the suspect's position would have understood his situation,' in the circumstances then obtaining, to be tantamount to being under arrest." United States v. Zapata, 18 F.3d 971 (1st Cir. 1994) (quoting Berkemer v. McCarty, 468 U.S. 420 (1984).

In the instant case, Mr. Crowley was approached by several officers "placed[2] on the ground" and searched by two officers. It is clear, under this circumstance, that Mr. Crowley was not free to leave. In fact, he was physically restrained by at least two officers from doing so. Mr. Crowley 's *de facto* arrest at the time of the search quite simply evidenced that the police action was not proportional to the degree of suspicion that prompted the intrusion. This, as a matter of law, constitutes an arrest for which the officers required probable cause. See, e.g., the unanimous opinion in United States v. Place, 462 U.S. 696 (1983) O'Connor, J. (... "the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining

---

[2] In this circumstance, isn't "placed" a euphemism for an abrupt "slamming" to the ground. To believe that an officer who asserted that he "placed" a person on the ground would do otherwise flies in the face of reason. It was not, simply, an "order" to stand still, or even to kneel with his hands on his head, it was a direct deprivation of liberty by its own terms. See attached police report.

whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion".)

## CONCLUSION

Mr. JARED CROWLEY respectfully submits that for each of the reasons set forth above, and any evidence that may be presented at the hearing on this motion, this Honorable Court should grant his motion to suppress all evidence obtained as a result of his warrantless search and seizure.

Date:                              Respectfully submitted,

/s/ *Victoria M. Bonilla*
VICTORIA BONILLA-ARGUDO, BBO #558750
77 Central St., 2nd Floor
Boston, MA 02109
(617)350-6868

Attorney for Defendant