UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                          )       CRIMINAL NO. 04-10304-RCL<br>)<br>JARED CROWLEY          )<br>)<br>      Defendant            )<br>                                  ) | |

## GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS

The United States of America opposes defendant Jared Crowley's Motion to Suppress because it is without basis in fact or law. In this case, a federal grand jury returned an indictment charging Crowley with possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922 (g) (1). The evidence Crowley seeks to suppress – a loaded firearm – was located and seized by police during a valid investigatory detention pursuant to Terry v. Ohio, 392 U.S. 1 (1968). In his motion, Crowley seeks to characterize the Terry stop as an arrest. This characterization, however, is not supported by the facts.

At the time of seizure, police had information that a witness had, moments earlier, reported seeing a man with a handgun. The description of that man matched Crowley precisely. Crowley's location was consistent with the location of the man described by the witness. Police knew Crowley was a convicted felon and, therefore, knew that his possession of a firearm would be a crime. Finally the police had recent information that Crowley was known to be carrying a firearm. The police thus had articulable suspicion that Crowley was armed with a gun. That reasonable suspicion justified both the investigatory detention and the pat frisk that yielded the firearm.

**I.     FACTS**[1]

On May 27, 2004, a 9-1-1 caller reported that a man wearing gray sweat pants and a blue football jersey bearing the number 32 and carrying a backpack had lifted the jersey and displayed a gun tucked into his waist band. The caller stated that she had observed this moments earlier and that, until moments earlier, the man with the gun had been visible from the window of her apartment.

Police officers immediately went to the caller's residence to speak with her. The caller lives in the Father Flanagan public housing development in Lowell, which is a high crime area. The police arrived at the caller's residence within approximately three minutes of the 9-1-1 call. The caller gave the police her name and reiterated what she had told the police dispatcher.

Minutes later, other Lowell police officers – who had heard the original description of the man carrying a gun – saw Jared Crowley in a location consistent with the information provided by the caller. These officers knew that Crowley had previously been convicted of a felony and was reputed to carry a gun. In addition, a few weeks earlier, officers had received information that Crowley might be in possession of a firearm. When officers saw Crowley, he was carrying a backpack and dressed precisely as described by the caller. Two officers immediately approached Crowley. One officer placed Crowley face down on the ground and conducted a pat frisk of Crowley's outer garments while another officer pat frisked Crowley's the backpack. The latter officer immediately felt what he recognized to be a handgun. Inside the backpack, the officer found a .357 Magnum handgun loaded with four rounds of ammunition. The police's encounter

---

[1] The facts set forth herein are nearly identical to those proffered by the defendant. In the event of an evidentiary hearing on the defendant's motion, the government will present evidence to establish the facts set forth herein.

with Crowley lasted only a few seconds before the police found the loaded gun.

## II.  ARGUMENT

### A.  The Seizure Of The Defendant Was A Proper Terry Stop

It is black-letter law that a police officer may stop an individual reasonably suspected of criminal activity, question him briefly, and perform a limited pat-down frisk for weapons. Terry v. Ohio, 392 U.S. 1, 22-24 (1968).  This allows police officers to approach persons for purposes of investigating possible criminal behavior even though there is no probable cause to arrest.  Id. at 22.  With respect to investigatory stops under Terry, the First Circuit has explained that the question "is not whether the police had probable cause to act, but instead whether the actions taken were reasonable under the circumstances." United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997), quoting United States v. McCarthy, 77 F.3d 522, 529 (1st Cir. 1996).  To assess the overall reasonableness of an investigatory stop under Terry, the Court must make a two-step inquiry.  First, the Court must ask "whether the officer's action was justified at its inception" and second, "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 19-20; Young, 105 F.3d at 6; McCarthy, 77 F.3d at 530.

#### 1.  The Investigatory Stop Of Wilson Was Justified At Its Inception

To determine if an investigatory stop is justified at its inception, the officer must be able to point to "specific and articulable facts...which reasonably warrant that intrusion." United States v. Kimball, 25 F.3d 1, 6 (1st Cir. 1994) (quoting Terry, 392 U.S. at 21).  Articulable suspicion is not a stringent standard.  Rather, "due weight must be given...to the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." United States v. Walker, 924 F.2d 1, 4 (1st Cir. 1991).  In this case, the

information received from the 9-1-1 caller along with both the police officers' knowledge that Crowley is a convicted felon known to carry a firearm and the recent information that Crowley may possess of a firearm amounted to more than sufficient reasonable suspicion to warrant a Terry stop.  In addition, the fact that the incident occurred in a high-crime area is another factor that goes into the reasonable suspicion calculus.  See Illinois v. Wardlow, 528 U.S. 119, 120 (2000) (presence in a high crime is an appropriate factor in assessing reasonable suspicion to stop and frisk).

    Here, the information provided by the 9-1-1 caller supplied specific, articulable facts to warrant a stop.  The First Circuit has recognized that where , as here, an "informant was not a professional. . . but a private citizen with no known criminal record or other criminal contacts, who comes forward on [her] own . . . [,] the informant's story may be more easily accepted . . . ." United States v. Scalia, 993 F.2d 984, 987 (1st Cir. 1993) (citations and internal quotation marks omitted).   Moreover, the Supreme Court has recognized that the type of 9-1-1 call seen here is more reliable than a mere anonymous tip.  "If an informant places [her] anonymity at risk, a court can consider this factor in weighing the reliability of the tip."  Florida v. J.L., 529 U.S. 266, 276 (1993).  By the time an officer stopped Crowley, the police had spoken to the 9-1-1 caller face-to-face.  She let the police into her residence and gave them her name.  She had altogether surrendered her anonymity and had made herself accountable for the information she provided.

    Furthermore, the information provided by the 9-1-1 caller was self-authenticating by virtue of its specificity and detail.  See United States v. Taylor, 985 F.2d 3, 5 (1st Cir. 1993) (noting, in the probable cause context, that a search warrant affidavit may support an informant's veracity through the very "specificity and detail" with which it relates the informant's first-hand

information). Here, the caller did not merely describe a man carrying the gun, she stated that he was wearing blue football jersey bearing the number 32, gray sweat pants, and backpack. This level of detail adds to the credibility of the 9-1-1 call.

Finally, the close proximity between the informant and the suspicious activity may be used to determine the tip's credibility. See United States v. Christmas, 222 F.3d 141, 144 (4th Cir. 2000) (tip about suspicious activity occurring only two houses away from informant's home deemed more reliable). Here, the 9-1-1 caller relayed events she saw from her apartment window.

### 2. The Interference Was Reasonably Related In Scope To The Circumstances Which Justified The Stop In The First Place

Likewise, the conduct of the police satisfies the second prong of the Terry test: "the action taken was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20; United States v. Taylor, 162 F.3d 12, 20 (1st Cir. 1998). It is well-established that "an officer is permitted to conduct a 'reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.'" Taylor, 162 F.3d at 20, quoting Terry, 392 U.S. at 27. "[I]t would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Id., quoting Terry, 392 U.S. at 24. In this case – where the police were responding to a 9-1-1 call concerning a man with a gun and where the defendant was known to be a convicted felon possibly in possession of gun – it would have been foolhardy for the officers not to pat frisk the defendant for weapons.

5

With regard to the conduct of the pat frisk, when an officer "lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent" it is lawful for the officer to seize that object if the article has the characteristics of a weapon or any other form of contraband.  Minnesota v. Dickerson, 508 U.S. 366, 367 (1993);  United States v. Trullo, 809 F.2d 108, 112 (1st Cir. 1987).  Courts have uniformly held that, where an officer has reasonable suspicion to conduct a frisk for weapons, the scope of that frisk includes backpacks, purses, and bags.  See, e.g., United States v. Rhind, 289 F.3d 690, 693 (11th Cir. 2002) (no violation where police searched of defendant's backpack without first patting it for weapons); United States v. Atlas, 94 F.3d 447, 451 (8th Cir. 1996) (same with regard to bag that defendant dropped to ground when police approached him); United States v. Williams, 962 F.2d 1218, 1223-24 (6th Cir. 1992) (officers reasonable suspicion that defendant was an armed drug courier justified search of her purse).  Thus, given it was reasonable for the police to pat down the backpack on Crowley's back for weapons

      **B.**    **The Conduct Of The Police During The Stop Did Not Serve To Convert The Stop Into An Arrest.**

Because the circumstances that justified the stop in the first place warranted the caution exercised by the police in effecting the stop, the defendant's contention that the stop constituted an arrest is without merit.  It is well-established that police may seize someone temporarily in order to detain them long enough to effectuate a Terry stop if they have reason to believe they are involved in criminal activity.  California v. Hodari D., 499 U.S. 621, 628-629 (1991) .  It is also well- established that "the use of guns...do[es] not necessarily convert a Terry stop into a *de facto* arrest." United States v. Maguire, 918 F.2d 254, 259 (1st Cir. 1990) (citations omitted); and see United States v. Taylor, 162 F.3d 12, 20 (1st Cir. 1998).  Likewise, "the use of handcuffs

in the course of an investigatory stop does not automatically convert the encounter into a *de facto* arrest." United States v. Acosta-Colon, 157 F.3d 9, 19 (1st Cir. 1998) (citations omitted).  Nor does a lengthy interrogation convert a Terry stop into an arrest.  See United States v. Quinn, 815 F.2d 153, 156-58 (1st Cir. 1987) (holding that no arrest occurred where five police officers were present and interrogation took 20-25 minutes). The First Circuit has said on a number of occasions that an arrest occurs only in a situation where "restraints comparable to those of a formal arrest" are imposed.  United States v. Acosta-Colon, 157 F.3d 9,15 (1st Cir. 1998) (citing cases).  Noting that there is no bright-line test for distinguishing a stop from an arrest, the First Circuit has emphasized that the inquiry is fact specific.  Id.

emphasized that the inquiry is fact specific.  Id.

Thus, for example, the stop in Taylor continued to be a valid Terry-type investigatory stop for thirty minutes although the stop involved ten or twelve officers who removed the suspects from the car, placed them face down on the ground, and pat frisked them over the course of several minutes.  162 F.3d at 21-22.  In addition to the duration of the stop, the Taylor court considered several aspects of the initial stop to support its conclusion that the "totality of the circumstances demonstrate[d] that a valid Terry stop occurred."  Id. at 22.

> First, at no time prior to the discovery of drugs and weapons was Taylor placed in handcuffs.  Second, there is no evidence in the record that Taylor was treated harshly by the officers or physically handled beyond the limited pat-frisk officers conducted immediately after Taylor was removed from the car.  Third, none of the officers communicated to Taylor that he was under arrest or that they wished to place him under arrest until after the contraband was seized.  Fourth, at no time prior to the discovery of the cocaine, weapon, and ammunition was Taylor told that he was not free to leave. Fifth, all the officers re-holstered their weapons immediately after the occupants of the Acura were taken from the car and secured .  Finally, all of the events – including the search of the car and the interrogation of its occupants – took place on a public street.

Id.

In contrast to cases, such as Taylor, in which the First Circuit has found the use of some

7

force appropriate under <u>Terry</u>, the level of force employed in effecting the stop of Crowley was modest and appropriate. An officer placed Crowley on the ground to ensure his safety and that of his fellow officer during the frisk. The encounter lasted only a few seconds before the police found the loaded gun in Crowley's back pack. At that point, the police had probable cause to arrest Crowley. Under the circumstance, the officers' actions were reasonable and within the scope of a lawful <u>Terry</u> stop.

## **CONCLUSION**

For the reasons stated above, this Court should deny the defendant's motion to suppress.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
JOHN A. CAPIN
Assistant U.S. Attorney
(617) 748-3264