UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                )
UNITED STATES OF AMERICA   )
                                                )
                                                )
v.                                            )        Criminal Action
                                                )        No. 04-10304-RCL
JARED CROWLEY             )
                    Defendant.   )
                                                )
_____)

ORDER ON DEFENDANT'S MOTION TO SUPPRESS
STOP AND SUBSEQUENT SEARCH

LINDSAY, District Judge

Before the court is a motion by defendant Jared Crowley ("Crowley") to suppress a firearm and ammunition that he claims police officers obtained as a result of an unlawful stop and search of his person and backpack in Lowell, Massachusetts on May 27, 2004. Crowley has been charged in this court with being a felon in possession of firearm and ammunition in violation of Title 18, United States Code, Section 922(g)(1).

I.      Background Facts

On May 27, 2004, a 911 caller contacted the Lowell Police Department and described a white male with a gun in his waistband. According to the caller, the man was carrying a backpack and wearing a blue football jersey bearing the number 32 and grey sweatpants. According to the caller, the white male with the gun was accompanied by a black male. Within three minutes of the call, two officers arrived at the caller's residence, in the Father Flanagan Public Housing Development in Lowell, where the caller reiterated her story and gave the officers her name.

Minutes later, two other officers saw the defendant, with a backpack, dressed exactly as

the caller had described and in a location consistent with the caller's description.[1] He was also accompanied by a black male. One officer placed Crowley on the ground and proceeded to conduct a pat-down of his clothes. No weapons were found on Crowley's person. Simultaneously, with the pat down of Crowley himself, another officer performed a pat-down of the backpack, which had been separated from Crowley. The officer felt, in the backpack, a hard object he believed to be a handgun. The officer then opened the bag and found a Smith & Wesson Model .357 Magnum with four round of ammunition. Crowley was then placed under arrest.

II.    Discussion

Crowley contends that the police officers went beyond the scope of an investigatory stop by throwing him to the ground and searching his backpack after he no longer had access to it. Because there is no dispute that the police officers were without probable cause to arrest Crowley when they initially stopped him, this case is governed by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). In *Terry*, the Supreme Court first recognized "that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. 1868. Because "[t]he concept of reasonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules," the court evaluates the totality of

---

[1] The government also claims that the police officers, at the time they questioned Crowley, knew that he had been convicted of a felony and was reputed to be carrying a gun. Because the government does not explain how the police officers knew these facts about Crowley, I have not credited this evidence. My conclusions as to the propriety of the search do not depend on these assertions.

the circumstances in determining the validity of a stop. *Id.* at 7-8, 88 S.Ct. 1868 (internal citation and quotations omitted).

To determine whether a police officer has conducted a proper investigatory stop, the court must first ask "whether the officer's action was justified at its inception," and then must inquire "whether the action taken was reasonably related in scope to the circumstances which justified the interference." *United States v. Young*, 105 F.3d 1, 6 (1st Cir. 1996). "The first part of the inquiry is satisfied if the officers can point to specific and articulable facts which, taken together with rational inferences derived from those facts, reasonably show that an investigatory stop was warranted." *United States v. Maguire*, 359 F.3d 71, 76 (1st Cir. 2004)(citations and internal quotations omitted).

Here, I find that, given the totality of the circumstances, the officers' stop of Crowley was reasonable at its inception. First, the officers had information from the 911 caller that there was, in the vicinity, a white male with a gun in his waistband and wearing gray sweatpants and a football jersey emblazoned with the number 32. The officers also had information from the caller that the suspect had a backpack and was walking with a black male. Then, within minutes, officers saw Crowley, who fit the caller's description. He was walking with a black male and was located where the caller described he would be. Thus, at the inception of the stop, the police officers had a reasonable and articulable suspicion to justify stopping Crowley in order to ask him questions "likely to confirm or dispel their suspicions quickly." *Maguire*, 359 F.3d at 77 (citations and internal quotations omitted).

The central question here then is whether the actions of the officers following the stop

were reasonable. Crowley, relying on *United States v. Pardue*, 385 F.3d 101, 105 (1st Cir. 2004), argues that the police unreasonably exceeded the scope of the stop. The police officer in *Pardue* received a radio report of a 911 call by Pardue's sister alleging that he had assaulted her by throwing a lighter at her and then had left the residence. *Pardue*, 385 F.3d at 103. She described her brother as a white male, in his early 20s, wearing a hooded sweatshirt and a baseball hat, and carrying a backpack. *Id.* In response to the call, an officer saw a man fitting Pardue's description, wearing a backpack, several hundred feet from the residence. *Id.* at 103-104. The officer briefly questioned Pardue, but did not place him under arrest. *Id.* at 104. Instead, the officer placed Pardue's backpack on the trunk of his cruiser then conducted a pat down of Pardue. *Id.* at 104. After finding no weapons, he told Pardue to sit in the back of the police cruiser while he conducted a pat down of the backpack, which was still on the trunk of the cruiser. *Id.* The search revealed, among other things, two rounds of rifle ammunition. *Id.* The police eventually arrested Pardue as a result of this search and charged him with possession of ammunition by a person convicted of the misdemeanor crime of domestic violence. *Id.*

In reviewing the district court's denial of Pardue's motion to suppress, the First Circuit stated that:

> while the district court found that the officers had reasonable suspicion to stop [the defendant], it held that [the officer] did not have a particularized safety concern. Indeed, we note that by the time [the officer] searched the backpack, it had already been taken away from [the defendant] and there was no apparent risk that [the defendant] could have obtained a weapon or anything else from it. Thus, the district court held, and we agree, that the initial search of the backpack was outside the bounds set by *Terry*.

*United States v. Pardue*, 385 F.3d at 105.

At first blush *Pardue* appears to apply directly to this case. Here, as in *Pardue*, the

officers searched the backpack after it was separated from the defendant and when the officers had already determined that the defendant had no weapons on his person. There is also no dispute that when the police searched the backpack it was not in the defendant's immediate control and he could not access it to retrieve a weapon.

However, a significant difference between this case and *Pardue* is that in the latter the police "did not have a particularized safety concern." *Pardue*, 385 F.3d at 105.  The police officer in *Pardue* did not indicate that he thought that the defendant was armed or dangerous. *See United States v. Pardue*, 270 F.Supp.2d 61, 66 (D.Me. 2003) (stating that the officer "did not have the objectively reasonable belief that the Defendant was armed and dangerous that is necessary to lawfully pat down, let alone open and search, Defendant's backpack").   The officers here, by contrast, specifically had been informed that a person who fit Crowley's description and location had been seen with a gun just minutes before they approached him.  Consequently, when the police officers approached Crowley, they reasonably believed that he was armed and dangerous.  Thus, this is not a case, like *Pardue*, where the police officers searched defendant's backpack simply as a matter of "routine." *Pardue*, 270 F.Supp.2d at 66 (indicating that the search of the backpack was unlawful partly because the officer there testified that he searched as a matter of "routine" not because there was any indication he believed the defendant was armed).[2]  Here the officers reasonably believed Crowley to be in possession of a firearm, which could easily have been secreted in the backpack, and were entitled to ensure their safety by conducting a pat down

---

[2] Crowley also maintains that the conduct by the police in this case amounted to a de facto arrest because the police placed him on the ground.  The First Circuit has recently rejected a similar argument. *See U.S. v. Maguire*, 359 F.3d 71, 78 (1st Cir. 2004) (stating that "[t]he fact that [defendant] was put on the ground does not imply that there was a de facto arrest").

5

of the backpack to determine whether Crowley had placed the weapon inside.

    III.    Conclusion

For the foregoing reasons, Crowley's motion to suppress the gun and ammunition obtained by the police on May 27, 2004 is DENIED.

SO ORDERED.


DATED: February 18, 2005                  /s/ REGINALD C. LINDSAY
                                                                 United States District Judge